**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| **HAIDYN J. COX**, | ) | **CASE ID**: _____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | **COMPLAINT** |
| v. | ) | (*Res Ipsa Loquitor*/Medical Malpractice/Corporate Negligence) |
| | ) | |
| | ) | |
| | ) | |
| **CHILDREN'S HOSPITAL & MEDICAL** | ) | |
| **CENTER,** d/b/a Children's Hospital and | ) | |
| Medical Center, d/b/a Children's Hospital, | ) | |
| d/b/a Children's Nebraska, d/b/a Children's | ) | |
| Specialty Physicians; **NEBRASKA** | ) | |
| **PEDIATRIC PRACTICE, INC.;** | ) | |
| **CHILDREN'S PHYSICIANS**; | ) | |
| **ABDALLA E. ZARROUG, M.D.,** | ) | |
| **F.A.C.S., F.A.A.P.**; and **MEGAN K.** | ) | |
| **FULLER, M.D.**, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**ALLEGATIONS COMMON TO ALL COUNTS**

Plaintiff Haidyn J. Cox ("Mr. Cox") for his common allegations and causes of action against the above-named defendants, states as follows:

-1-

**PRELIMINARY STATEMENT**

1.      This is a civil action arising out of health care services provided or not provided to Mr. Cox for the time period commencing on or about April 15, 2024, and continuing thereafter, by, individually and/or collectively, the following: (a) Defendant Children's Hospital & Medical Center, a Nebraska non-profit corporation, d/b/a Children's Hospital and Medical Center, d/b/a Children's Hospital, d/b/a Children's Nebraska, and d/b/a Children's Specialty Physicians ("CHMC"); (b) Defendant Nebraska Pediatric Practice, Inc., a Nebraska non-profit corporation ("NPP"); (c) Defendant Children's Physicians, a Nebraska non-profit corporation ("CP"); (d) Defendant Abdalla E. Zarroug, M.D. ("Dr. Zarroug"); and Defendant Megan K. Fuller, M.D. ("Dr. Fuller" and together with CHMC, NPP, CP, and Dr. Zarroug, are each individually referred to herein as, a "Defendant" and collectively as, the "Defendants").

2.      Mr. Cox seeks recovery of all damages allowed by law, and specifically for the separate causes of action pled in more detail below.

**PARTIES**

3.      Mr. Cox is a resident of Pottawattamie County, Iowa.

4.      At all times relevant herein, CHMC was a Nebraska non-profit corporation, operating its business under the registered trade names of "Children's Hospital and Medical Center," "Children's Hospital," and "Children's Nebraska." At all times relevant herein, CHMC also operated its business under and marketed itself with the registered service mark of "Children's Specialty Physicians."

5.      At all times relevant herein, CHMC, in whole or in part, engaged in the business of providing comprehensive health care goods and services, as well as owning and operating health care facilities including, but not limited to, that certain health care facility more commonly known

as Children's Nebraska located at 8200 Dodge Street, Omaha, Nebraska 68114 (the "Hospital"). CHMC provided health care goods and services on an inpatient and/or outpatient basis to members of the general public including, but not limited to, Mr. Cox.

6.     At all times relevant herein, CHMC employed physicians, nurses, technicians, other health care professionals, agents, ostensible or apparent agents, servants, and/or employees (collectively, the "Hospital Staff") at the Hospital to provide health care goods and services on an inpatient and/or outpatient basis to members of the general public including, but not limited to, Mr. Cox.

7.     As a matter of law, the negligent acts and/or omissions of the Hospital Staff are imputed to CHMC and, therefore, CHMC is vicariously liable for all such negligent acts and/or omissions by the Hospital Staff.

8.     At all times relevant herein, CHMC published a website at: http://www.childrensnebraska.org.

9.     At all times relevant herein, CHMC advertised Dr. Zarroug as one of its health care providers specializing in pediatric surgery: https://www.childrensnebraska.org/provider/3216109/abdalla-e-zarroug-md.

10.     At all times relevant herein, CHMC advertised Dr. Fuller as one of its health care providers specializing in pediatric surgery: https://www.childrensnebraska.org/provider/3216128/megan-k-fuller-md.

11.     At all times relevant herein, NPP was a Nebraska non-profit corporation, and it engaged in the business of providing health care and health care-related services through NPP and its various subsidiaries and affiliates.  NPP provided health care goods and services on an inpatient and/or outpatient basis to members of the general public including, but not limited to, Mr. Cox.

12.     At all times relevant herein, NPP employed physicians, nurses, technicians, other health care professionals, agents, ostensible or apparent agents, servants, and/or employees (collectively, the "NPP Staff") to provide health care goods and services on an inpatient and/or outpatient basis to members of the general public including, but not limited to, Mr. Cox.

13.     As a matter of law, the negligent acts and/or omissions of the NPP Staff are imputed to NPP and, therefore, NPP is vicariously liable for all such negligent acts and/or omissions by the NPP Staff.

14.     At all times relevant herein, CP was a Nebraska non-profit corporation operating its business under the registered trade name of "Children's Physicians."  CP engaged in the business of providing health care and health care-related services.  CP provided health care goods and services on an inpatient and/or outpatient basis to members of the general public including, but not limited to, Mr. Cox.

15.     At all times relevant herein, CP employed physicians, nurses, technicians, other health care professionals, agents, ostensible or apparent agents, servants, and/or employees (collectively, the "CP Staff") to provide health care goods and services on an inpatient and/or outpatient basis to members of the general public including, but not limited to, Mr. Cox.

16.     As a matter of law, the negligent acts and/or omissions of the CP Staff are imputed to CP and, therefore, CP is vicariously liable for all such negligent acts and/or omissions by the CP Staff.

17.     At all times relevant herein, Dr. Zarroug was a licensed physician practicing medicine in the State of Nebraska, and he held himself out to be a skilled and competent physician.

-4-

18. At all times relevant herein, Dr. Zarroug was an employee, agent, servant, director and/or ostensible or apparent agent of CHMC, NPP, and/or CP, acting in the course and scope of his employment or other business relationship with CHMC, NPP, and/or CP.

19. As a matter of law, the negligent acts and/or omissions of Dr. Zarroug are imputed to CHMC, NPP and/or CP, and, therefore, CHMC, NPP and/or CP is vicariously liable for all such negligent acts and/or omissions.

20. At all times relevant herein, Dr. Fuller was a licensed physician practicing medicine in the State of Nebraska, and she held herself out to be a skilled and competent physician.

21. At all times relevant herein, Dr. Fuller was an employee, agent, servant, director and/or ostensible or apparent agent of CHMC, NPP, and/or CP, acting in the course and scope of her employment or other business relationship with CHMC, NPP, and/or CP.

22. As a matter of law, the negligent acts and/or omissions of Dr. Fuller are imputed to CHMC, NPP and/or CP, and, therefore, CHMC, NPP and/or CP is vicariously liable for all such negligent acts and/or omissions.

23. Mr. Cox reserves his right to add additional parties, causes of action, and/or additional claims for damages under the circumstances of this case.

## JURISDICTION

24. This Court has jurisdiction under 28 U.S.C. §1332.

25. As of the date hereof, Mr. Cox is a citizen and resident of the State of Iowa.

26. As of the date hereof and upon information and belief, CHMC is a citizen of the State of Nebraska, its state of formation and its principal place of business.

27. As of the date hereof and upon information and belief, NPP is a citizen of the State of Nebraska, its state of formation and its principal place of business.

28.     As of the date hereof and upon information and belief, CP is a citizen of the State of Nebraska, its state of formation and its principal place of business.

29.     As of the date hereof and upon information and belief, Dr. Zarroug is a citizen and resident of the State of Nebraska.

30.     As of the date hereof and upon information and belief, Dr. Fuller is a citizen and resident of the State of Nebraska.

31.     The amount in controversy exceeds $75,000, exclusive of interest and costs.

## VENUE

32.     Venue lies in this Court as the negligent acts and/or omissions complained of herein occurred in Douglas County, Nebraska.

## NEBRASKA HOSPITAL-MEDICAL LIABILITY ACT

33.     Mr. Cox asserts that, at all times relevant herein, each of the Defendants failed to properly qualify for coverage under the Nebraska Hospital-Medical Liability Act, Neb. Rev. St. § 44-2801 et. seq. R.R.S. 1943, as amended (the "Act") and has failed to comply with the requirements of the Act.  Mr. Cox demands strict proof that at all times relevant herein, any Defendant making such a claim, was covered by and in compliance with the Act.

34.     Notwithstanding any filing by, or claim of any of the Defendants for the special benefits, privileges and protection of the Act, Mr. Cox alleges that the Act is unconstitutional in whole or in part because it violates the Seventh (7th) and Fourteenth (14th) Amendments to the Constitution of the United States, as well as the following provisions of the Constitution of the State of Nebraska:  Article 1, §§ 1, 3, 6, 13, 16, 21, 25, 26; Article II, § 1; Article III, §18; Article V, § 2; Article VI, § 1 and Article XII, § 10(c).

35.     Mr. Cox hereby affirmatively waives his right for a medical review panel to review his claims noted herein against the Defendants as provided by the Act and he elects to file this action directly in the U.S. District Court for the District of Nebraska.

36.     A copy of this Complaint is hereby served upon the Director of the State of Nebraska Department of Insurance, together with a copy upon the Attorney General of the State of Nebraska.

## STATEMENT OF FACTS

37.     During the time period commencing on or about April 14, 2024, and continuing thereafter, CHMC and the Hospital Staff provided or failed to provide health care services to Mr. Cox relating to his condition, thereby establishing a health care provider-patient relationship between CHMC and Mr. Cox.

38.     During the time period commencing on or about April 14, 2024, and continuing thereafter, NPP and the NPP Staff provided or failed to provide health care services to Mr. Cox relating to his condition, thereby establishing a health care provider-patient relationship between NPP and Mr. Cox.

39.     During the time period commencing on or about April 14, 2024, and continuing thereafter, CP and the CP Staff provided or failed to provide health care services to Mr. Cox relating to his condition, thereby establishing a health care provider-patient relationship between CP and Mr. Cox.

40.     During the time period commencing on or about April 14, 2024, and continuing thereafter, Dr. Zarroug provided or failed to provide health care services to Mr. Cox relating to his condition, thereby establishing a physician-patient relationship between Dr. Zarroug and Mr. Cox.

41.     During the time period commencing on or about August, 14, 2024, and continuing thereafter, Dr. Fuller provided or failed to provide health care services to Mr. Cox relating to his condition, thereby establishing a physician-patient relationship between Dr. Fuller and Mr. Cox.

42.     On or about April 15, 2024, Mr. Cox underwent a surgical procedure at the Hospital for the incision and drainage ("I&D") of a perianal abscess.

43.     The I&D was performed by Dr. Zarroug and the Hospital Staff.

44.     During that procedure, Dr. Zarroug and the Hospital Staff utilized surgical instruments and devices, including a guide wire, in the course of treatment.

45.     At the conclusion of the procedure, Dr. Zarroug and the Hospital Staff failed to remove all surgical materials and instruments from Mr. Cox's body.

46.     Specifically, a foreign body, which can be described as a metallic radiopaque density, was left inside Mr. Cox's body.

47.     Dr. Zarroug and the Hospital Staff failed to identify and/or account for the retained foreign body prior to closing the surgical site.

48.     Dr. Zarroug and the Hospital Staff failed to properly perform instrument and/or foreign body counts, inspection, and/or verification procedures required to ensure that no foreign bodies remained within the Mr. Cox.

49.     Following the procedure at the Hospital on April 15, 2024, Mr. Cox continued to experience pain, symptoms, and complications.

50.     In the weeks and months following the procedure on April 15, 2024, Mr. Cox's symptoms persisted and/or worsened.

51. Around August of 2024, Mr. Cox underwent a CT abdomen/pelvis with contrast, which, according to his medical records, demonstrated a "curvilinear density concerning for a foreign body, please correlate with prior I&D."

52. On or about August 14, 2024, this finding was discussed with Dr. Zarroug at approximately 5:00 p.m.

53. Thereafter, a second surgical procedure was performed by Dr. Fuller and the Hospital Staff at the Hospital in an attempt to address Mr. Cox's ongoing symptoms.

54. During this procedure, Dr. Fuller and the Hospital Staff performed extensive surgical intervention, including the removal of Mr. Cox's coccyx (tailbone).

55. The procedure on August 14, 2024, was undertaken due to Defendants' failure to properly diagnose and identify the true cause of Mr. Cox's condition, namely the retained foreign body.

56. At the time of the procedure on August 14, 2024, and thereafter, the retained foreign body remained within Mr. Cox's body.

57. Thereafter, Mr. Cox sought further medical evaluation and treatment at the University of Iowa for the purpose of removing the retained foreign body.

58. Physicians at the University of Iowa attempted to remove the retained foreign body; however, that attempt was unsuccessful.

59. Physicians further determined that any further attempts at removal presented significant and unacceptable risks to Mr. Cox's health and safety.

60. As a result, as of the date hereof, the retained foreign body remains within Mr. Cox's body.

61. The retained foreign body is now, to a reasonable degree of medical certainty, a permanent foreign body within Mr. Cox.

62. The retained foreign body was the underlying cause, in whole or in part, of Mr. Cox's ongoing symptoms and complications following the procedure on April 15, 2024.

63. The presence of the retained foreign body is the result of Defendants' negligence during the procedure on April 15, 2024, and subsequent treatment thereafter.

64. The retained foreign body caused or contributed to Mr. Cox's ongoing pain, complications, and need for additional medical treatment.

65. Defendants, and each of them, failed to timely and properly identify the presence of the retained foreign body.

66. Defendants, and each of them, failed to timely and properly disclose the presence of the retained foreign body.

67. Defendants, and each of them, failed to timely and properly remove the retained foreign body.

68. Defendants failed to order, interpret, or act upon appropriate diagnostic studies that would have revealed the retained foreign body.

69. As a direct and proximate result of the negligence of Defendants, Mr. Cox has suffered severe and permanent injuries.

70. Specifically, Mr. Cox now has a retained foreign body within his body that, to a reasonable degree of medical certainty, cannot be safely removed without subjecting him to significant and unacceptable medical risks.

71. As a result, the retained foreign body has become a permanent condition for Mr. Cox, altering Mr. Cox's anatomy and compromising his bodily integrity.

72.    Mr. Cox has suffered and will continue to suffer physical pain, discomfort, and ongoing symptoms associated with the retained foreign body. Mr. Cox has also been subjected to additional invasive medical procedures, including unsuccessful attempts to remove the retained foreign body, which have increased the complexity of his condition and his risk of future complications.

73.    Mr. Cox faces an increased risk of infection, internal injury, migration of the retained foreign body, and the potential need for high-risk surgical intervention in the future.

74.    Mr. Cox has incurred medical expenses in the past and will continue to incur medical expenses in the future, including costs associated with diagnostic testing, specialist care, monitoring, and potential future treatment, including evaluation and treatment at tertiary care facilities. Mr. Cox will require ongoing medical surveillance and care as a result of the retained foreign object.

75.    In addition, Mr. Cox has suffered and will continue to suffer significant mental anguish and emotional distress, including anxiety, fear, and loss of peace of mind arising from the knowledge that a foreign body remains permanently within his body and may cause future harm. Mr. Cox has experienced and will continue to experience a diminished quality of life and loss of enjoyment of normal activities due to the ongoing physical and psychological burden of this condition.

76.    Mr. Cox has further suffered loss of normal life, inconvenience, and disruption to his daily activities, and has been forced to live with the ongoing uncertainty and risk associated with a permanent retained foreign body. These damages are continuing in nature and will persist into the future.

77.    The standard of care applicable to each of the Defendants is a national one.

## COUNT I – *RES IPSA LOQUITUR*

For his Count I claim against Defendants, Mr. Cox incorporates by reference Paragraphs 1 through 77 of the Allegations Common to All Counts and alleges:

78. The events and injuries described herein are of a kind which ordinarily do not occur in the absence of negligence.

79. The retention of a surgical instrument or foreign body within a patient's body following a surgical procedure does not occur in the absence of negligence.

80. At all relevant times, the surgical instruments, devices, and operative field were under the exclusive control of Dr. Zarroug and the Hospital Staff.

81. Mr. Cox did not contribute to or cause the retention of the foreign body in any manner.

82. The presence of the retained foreign body is *prima facie* evidence of negligence on the part of Defendants.

83. By reason of the foregoing, negligence on the part of Defendants may be inferred under the doctrine of *res ipsa loquitur*.

84. As a result of the joint and several negligence of: (a) the Hospital Staff, for which CHMC is vicariously liable; (b) the NPP Staff, for which NPP is vicariously liable; (c) the CP Staff, for which CP is vicariously liable; (d) Dr. Zarroug, for which CHMC, NPP, and/or CP is vicariously liable; and (e) Dr. Fuller, for which CHMC, NPP and/or CP is vicariously liable, Mr. Cox suffered injuries including, but not limited to, the following:

    a. Underwent medical procedures, which would not otherwise have been necessary;

    b. Incurred medical expenses, which would not otherwise have been necessary;

    c. Failed to receive timely and necessary medical treatments;

d. Medical expenses;

e. Lost wages;

f. Loss of future earning capacity;

g. Pain;

h. Suffering;

i. Inconvenience;

j. Mental suffering/anguish;

k. Emotional distress;

l. Injury to reputation;

m. Humiliation; and

n. Other damages and pecuniary losses for which recovery is allowed by law, the nature and extent of which are not presently known.

**WHEREFORE**, Mr. Cox prays for judgment against Defendants, and each of them, for special damages in an amount undetermined at this time, for all general damages allowable under the laws of the State of Nebraska, and for such other and further relief as the Court may deem just and equitable under the circumstances.

### COUNT II – MEDICAL MALPRACTICE/ PROFESSIONAL NEGLIGENCE

For his Count II claim against CHMC, NPP, CP, Dr. Zarroug and Dr. Fuller, Mr. Cox incorporates by reference Paragraphs 1 through 77 of the Allegations Common to All Counts and alleges:

85. As a result of the health care provider-patient relationship between CHMC and Mr. Cox, the Hospital Staff owed Mr. Cox a duty to possess and use the care, skill, and knowledge

ordinarily possessed and used under like circumstances by other health care providers and members of their respective professions engaged in a similar practice.

86. As a result of the health care provider-patient relationship between NPP and Mr. Cox, the NPP Staff owed Mr. Cox a duty to possess and use the care, skill, and knowledge ordinarily possessed and used under like circumstances by other health care providers and members of their respective professions engaged in a similar practice.

87. As a result of the health care provider-patient relationship between CP and Mr. Cox, the CP Staff owed Mr. Cox a duty to possess and use the care, skill, and knowledge ordinarily possessed and used under like circumstances by other health care providers and members of their respective professions engaged in a similar practice.

88. CHMC, the Hospital Staff, NPP, the NPP Staff, CP, and the CP Staff breached their respective duties to Mr. Cox to possess and use the care, skill, and knowledge ordinarily possessed and used under like circumstances by other health care providers and members of their respective professions engaged in a similar practice because, in one or more of the following ways, each of them:

    a. Failed to properly count, track, and account for all surgical instruments and materials, including the foreign body;

    b. Failed to follow established surgical count protocols and procedures;

    c. Failed to communicate discrepancies or uncertainties in surgical counts to the surgeon;

    d. Failed to ensure that all instruments and devices introduced into the surgical field were removed;

    e. Failed to recognize and report the potential retention of a foreign body;

    f.    Failed to adhere to hospital policies and procedures regarding surgical safety and foreign body prevention;

    g.    Failed to advocate for patient safety when appropriate; and

    h.    Otherwise failed to exercise reasonable care under the circumstances.

89.    As a result of the physician-patient relationship between Dr. Zarroug and Mr. Cox, Dr. Zarroug owed Mr. Cox a duty to possess and use the care, skill, and knowledge ordinarily possessed and used under like circumstances by other physicians engaged in a similar practice.

90.    Dr. Zarroug breached his duty to Mr. Cox to possess and use the care, skill, and knowledge ordinarily possessed and used under like circumstances by other health care providers and members of his respective profession engaged in a similar practice because, in one or more of the following ways, he:

    a.    Failed to remove all surgical instruments and materials, including a foreign body, from Mr. Cox's body following the procedure performed on April 15, 2024;

    b.    Failed to properly inspect the surgical field prior to closure;

    c.    Failed to ensure that all surgical counts were complete and accurate before closing the surgical site;

    d.    Failed to recognize and identify that a foreign body had been retained within Mr. Cox;

    e.    Failed to order appropriate post-operative imaging or diagnostic studies that would have identified the retained foreign body;

    f.    Failed to timely diagnose the presence of the retained foreign body despite ongoing symptoms;

g.  Failed to consider retained foreign body as a cause of Mr. Cox's persistent complaints;

h.  Allowed a subsequent surgical procedure, including coccygectomy, without identifying and addressing the retained foreign body;

i.  Subjected Mr. Cox to unnecessary and/or excessive surgery;

j.  Failed to exercise reasonable surgical judgment under the circumstances;

k.  Failed to provide appropriate post-operative monitoring, evaluation, and follow-up care; and

l.  Otherwise failed to meet the applicable standard of care.

91.  As a result of the physician-patient relationship between Dr. Fuller and Mr. Cox, Dr. Fuller owed Mr. Cox a duty to possess and use the care, skill, and knowledge ordinarily possessed and used under like circumstances by other physicians engaged in a similar practice.

92.  Dr. Fuller breached her duty to Mr. Cox to possess and use the care, skill, and knowledge ordinarily possessed and used under like circumstances by other health care providers and members of her respective profession engaged in a similar practice because, in one or more of the following ways, she:

a.  Failed to identify the retained foreign body as the source of Mr. Cox's symptoms prior to the surgery on August 15, 2024;

b.  Proceeded with extensive surgical intervention, including coccygectomy, without adequate diagnostic evaluation of Mr. Cox;

c.  Failed to obtain and/or interpret appropriate imaging of Mr. Cox prior to surgical intervention that would have revealed the retained foreign body;

d.  Performed unnecessary surgery;

e. Failed to exercise reasonable clinical judgment in diagnosing and treating Mr. Cox's condition; and

f. Otherwise failed to meet the applicable standard of care.

93.    As a result of the joint and several negligence of: (a) the Hospital Staff, for which CHMC is vicariously liable; (b) the NPP Staff, for which NPP is vicariously liable; (c) the CP Staff, for which CP is vicariously liable; (d) Dr. Zarroug, for which CHMC, NPP, and/or CP is vicariously liable; and (e) Dr. Fuller, for which CHMC, NPP and/or CP is vicariously liable, Mr. Cox suffered injuries including, but not limited to, the following:

a. Underwent medical procedures, which would not otherwise have been necessary;

b. Incurred medical expenses, which would not otherwise have been necessary;

c. Failed to receive timely and necessary medical treatments;

d. Medical expenses;

e. Lost wages;

f. Loss of future earning capacity;

g. Pain;

h. Suffering;

i. Inconvenience;

j. Mental suffering/anguish;

k. Emotional distress;

l. Injury to reputation;

m. Humiliation; and

n. Other damages and pecuniary losses for which recovery is allowed by law, the nature and extent of which are not presently known.

-17-

**WHEREFORE**, Mr. Cox prays for judgment against CHMC, NPP, CP, Dr. Zarroug, and Dr. Fuller for special damages in an amount undetermined at this time, for all general damages allowable under the laws of the State of Nebraska, and for such other and further relief as the Court may deem just and equitable under the circumstances.

COUNT III – CORPORATE NEGLIGENCE

For his Count III claim against CHMC, NPP, and CP, Mr. Cox incorporates by reference Paragraphs 1 through 77 of the Allegations Common to All Counts and alleges:

94.    As a result of the health care provider-patient relationship between CHMC and Mr. Cox, CHMC owed Mr. Cox a duty to possess and use the care, skill, and knowledge ordinarily possessed and used under like circumstances by other health care providers engaged in a similar practice.

95.    As a result of the health care provider-patient relationship between NPP and Mr. Cox, NPP owed Mr. Cox a duty to possess and use the care, skill, and knowledge ordinarily possessed and used under like circumstances by other health care providers engaged in a similar practice.

96.    As a result of the health care provider-patient relationship between CP and Mr. Cox, CP owed Mr. Cox a duty to possess and use the care, skill, and knowledge ordinarily possessed and used under like circumstances by other health care providers engaged in a similar practice.

97.    CHMC, NPP, and CP breached their duties to Mr. Cox to possess and use the care, skill, and knowledge ordinarily possessed and used under like circumstances by other health care providers engaged in a similar practice because, in one or more of the following ways, each of them:

a. Failed to develop appropriate policies, memorandum, rules, procedures, protocols, standards, bulletins, statements, and/or other equivalent documents relevant to preventing the retention of foreign bodies in a patient following surgery prior to and following Mr. Cox's admission to the Hospital on April 14, 2024;

b. Failed to promulgate appropriate policies, memorandum, rules, procedures, protocols, standards, bulletins, statements, and/or other equivalent documents relevant to preventing the retention of foreign bodies in a patient following surgery prior to and following Mr. Cox's admission to the Hospital on April 14, 2024;

c. Failed to institute adequate policies, memorandum, rules, procedures, protocols, standards, bulletins, statements, and/or other equivalent documents relevant to preventing the retention of foreign objects in a patient following surgery prior to and following Mr. Cox's admission to the Hospital on April 14, 2024;

d. Failed to comply with appropriate policies, memorandum, rules, procedures, protocols, standards, bulletins, statements, and/or other equivalent documents relevant to preventing the retention of foreign bodies in a patient following surgery prior to and following Mr. Cox's admission to the Hospital on April 14, 2024;

e. Failed to develop proper training manuals and in-house education relevant to preventing the retention of foreign bodies in a patient following surgery prior to and following Mr. Cox's admission to the Hospital on April 14, 2024;

f. Failed to communicate and/or deliver proper training manuals and in-house education to employees and agents relevant to the issues within this case prior to and following Mr. Cox's admission to the Hospital on April 14, 2024;

g.  Failed to ensure that physicians and employees received adequate and thorough training in diagnosis and treatment of conditions relevant to preventing the retention of foreign bodies in a patient following surgery prior to and following Mr. Cox's admission to the Hospital on April 14, 2024;

h.  Failed to enforce adherence by employees, agents, apparent agents, ostensible agents, and/or servants to communicated training manuals and in-house education relevant to preventing the retention of foreign bodies in a patient following surgery prior to and following Mr. Cox's admission to the Hospital on April 14, 2024;

i.  Failed to properly ensure that staff, employees, agents, apparent agents, ostensible agents, and/or servants, including physicians and nurses, had the ability to properly manage a patient such as Mr. Cox;

j.  Failed to ensure proper surgical count protocols and verification systems were followed;

k.  Failed to properly train, supervise, and monitor the Hospital Staff regarding surgical safety procedures;

l.  Failed to maintain a safe surgical environment;

m.  Failed to ensure effective communication among surgical team members;

n.  Failed to establish and enforce appropriate post-operative diagnostic and follow-up protocols;

o.  Failed to follow-up with Mr. Cox regarding his ongoing complaints;

p.  Failed to adequately investigate Mr. Cox's ongoing complaints;

q.  Failed to adequately resolve Mr. Cox's ongoing complaints;

    r.   Allowed Mr. Cox to undergo additional invasive surgery without proper diagnosis of the underlying condition;

    s.   Failed to exercise reasonable care in the operation of the Hospital; and/or

    t.   Were otherwise negligent in a manner not presently known to Mr. Cox.

98.    As a result of the joint and several negligence of CHMC, NPP and CP, Mr. Cox suffered the following injuries:

    a.   Underwent medical procedures, which would not otherwise have been necessary;

    b.   Incurred medical expenses, which would not otherwise have been necessary;

    c.   Failed to receive timely and necessary medical treatments;

    d.   Medical expenses;

    e.   Lost wages;

    f.   Loss of future earning capacity;

    g.   Pain;

    h.   Suffering;

    i.   Inconvenience;

    j.   Mental suffering/anguish;

    k.   Emotional distress;

    l.   Injury to reputation;

    m.   Humiliation; and

    n.   Other damages and pecuniary losses for which recovery is allowed by law, the nature and extent of which are not presently known.

**WHEREFORE**, Mr. Cox prays for judgment against CHMC, NPP, and CP, and each of them, for special and general damages plus interest, costs, attorneys' fees and expenses as may be

allowed by law, and for such further relief as this Court may deem just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Mr. Cox hereby requests that trial by jury of the foregoing action be held in the City of Omaha, Douglas County, Nebraska, and that the case be calendared accordingly.

**DATED**, this 3rd day of April, 2026.

**HAIDYN J. COX**, Plaintiff

By:    /s/ *Patrick J. Cullan*
       Patrick J. Cullan, #23576
       Cullan & Cullan L.L.C.
       1113 Harney Street
       Omaha, Nebraska 68102-1829
       Telephone:    (402) 397-7600
       Facsimile:    (402) 397-3816
       Email:        pat@cullanlaw.com
       ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of this Complaint was served to the following persons via United States Postal Service ("USPS"), Certified Mail® as indicated below, this 3rd day of April, 2026:

**USPS, CERTIFIED MAIL**

**Mike Hilgers**
Attorney General of the State of Nebraska
1445 K Street, Room 2115
Lincoln, Nebraska 68508

-and-

-23-

**Eric Dunning**
Director, The Nebraska Department of Insurance
P.O. Box 95087
Lincoln, Nebraska 68509-5087


                                                      /s/ *Patrick J. Cullan*